UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60303-SINGHAL

UNITED STATES OF AMERICA

vs.

ANDREY PEROV,

Defendant.
_______________________________________/

## FACTUAL PROFFER IN SUPPORT OF PLEA AGREEMENT

The United States of America and the Defendant agree that in this matter the United States would have established beyond a reasonable doubt the following facts. The parties agree that the factual proffer is a summary relating to the Defendant's conduct and does not include every detail of the offense. The Defendant agrees that he acted knowingly and willfully.

### Defendant's Gift Card and Money Order Redemption Business Activities

From in or about 2020 and continuing through in or about March 2024, the Defendant, through pawn shops he controlled, managed, supervised and owned, exchanged cash for millions of dollars-worth of prepaid gift cards on behalf of the general public and transmitted the prepaid gift cards or the value contained within the prepaid gift cards to other locations, accounts, or persons. During this same time-period, the Defendant, through pawn shops he controlled, managed, supervised and owned, also redeemed money orders. These pawn shops were in Broward and Miami-Dade County.

Members of the public came to the Defendant's pawn shops to cash out the value

contained within the prepaid gift cards and money orders and questions were never asked about where and how the prepaid gift cards or money orders were obtained nor were the true identities of the private citizens ever sought or known. The Defendant would charge a percentage, typically 15%, to cash out the value contained within the gift cards and money orders for various members of the public, who came to his pawn shops.

Cash was used to purchase these gift cards and money orders, which was obtained from other members of the public and questions were typically never asked as to where the cash came from. The Defendant would receive large amounts of cash at a time and used the cash to redeem the gift cards and money orders that other members of the public brought to his pawn shops. The Defendant would either process the gift cards through card processing terminals within the pawnshop or would sell the gift cards to online businesses for a profit. The Defendant would eventually transfer the cash, many times through wire, back to the individuals who provided him the cash to redeem gift cards and money orders. The Defendant knew that some of the cash and prepaid gift cards he obtained were derived from criminal activity.

**Undercover Law Enforcement Operation**

Beginning January 2021, law enforcement launched and undercover investigation into the Defendant's businesses. On January 27, 2021, a confidential human source ("CHS-1"), at the direction of law enforcement, audio and video recorded an in-person meeting with the Defendant in Broward County, Florida. During the meeting, the Defendant stated that he owned several pawn shops in South Florida and

could always use U.S. currency to purchase "gift cards." CHS-1 told the Defendant about his (CHS-1's) concerns about the source of his money. CHS-1 stated that to the Defendant that, "I don't want it to come back and haunt me. This is dirty money. You know, this is drug money that I did..., a while back." CHS-1 further advised the Defendant that the cash came from "Selling pills and stuff like that." The Defendant responded "Pills? Okay. No, I don't judge."

CHS-1 further explained to the Defendant that he needed to get the money into the banking system without drawing suspicion so that he could freely transact with the money. The Defendant ultimately agreed to receive $11,000 in cash proceeds from CHS-1 and to launder the proceeds through the Defendant's pawn shops. The Defendant agreed to electronically wire the proceeds to a bank account maintained by CHS-1, which bank account, pursuant to investigative strategy, was, in fact, a covert bank account maintained by law enforcement. The Defendant further explained to CHS-1 that the payments back to CHS-1's bank account could be justified as payments to CHS-1 for doing construction work for the Defendant. The Defendant instructed CHS-1 to deal with the Defendant's assistant (an unindicted co-conspirator) for the laundering of additional cash.

Following the Defendant's instructions, CHS-1 met with the Defendant's assistant to provide additional cash represented as drug proceeds so that it could be laundered through the Defendant's pawn shops. From February 18, 2021 to June 3, 2021, CHS-1 provided cash represented as drug proceeds to the Defendant's assistant on three separate occasions to be laundered through the pawn shops. In total, CHS-1 provided the Defendant a total of $110,000 of cash represented as drug proceeds to the

Defendant and the Defendant's assistant.

After receipt of the cash, the Defendant and others under his direction electronically transferred funds to a covert bank account maintained by the United States government from several accounts affiliated with the Defendant and his associates. $109,885 dollars was transferred back to the covert bank accounts.

Based on the information learned during the first stage of the FBI's investigation into PEROV, the FBI instructed CHS-1 to advise the Defendant's assistant that he had an associate (hereinafter "CHS-2") who dealt with "gift cards." To facilitate this part of the investigation, the FBI obtained gift cards to be used in an undercover investigation.

At the direction of law enforcement, on December 17, 2021, CHS-2 met with the Defendant's assistant and provided the assistant $40,000 worth of gift cards. During this meeting, CHS-2 advised the Defendant's assistant that he had an associate who was working with major corporations and that this associate was stealing credit card numbers from those corporations and getting these gift cards from the stolen credit card information. The Defendant's assistant agreed to provide monies in exchange for the value of those gift cards minus a transaction fee. A total of $35,000 was electronically transferred to government covert accounts, which represented the value of the gift cards that were provided minus the transaction fee that the Defendant was charging.

Between December 17, 2021 through November 22, 2022, CHS-2 met with the Defendant's assistant and other associates on ten (10) separate occasions to provide a total of $540,000 worth of gift cards in exchange for money minus a transaction fee. In return, the Defendant and his associates electronically transferred a total of $460,000 to covert government accounts.

The Defendant and his co-conspirators engaged in financial transactions that affected interstate commerce when wires were used to pay covert government accounts. Interstate commerce was also affected when the government used monies withdrawn from government-controlled bank accounts to give to the Defendant and his co-conspirators. All the transactions described above occurred in the Southern District of Florida.

I have read the Factual Proffer in Support of Plea Agreement set forth above. I believe that the above-stated facts set forth all the elements for the offense of Conspiracy to Commit Money Laundering, which are charged in Counts 2 and 3 of the Information, in violation of Title 18, United States Code, Section 1956(h). I agree with all the facts set forth in the Factual Proffer in Support of Plea Agreement.

Date: 4-7-26

VICTOR E. ROCHA for
PHILIP ROBERT HOROWITZ
ATTORNEY FOR DEFENDANT

Date: 4-7-26

ANDREY PEROV
DEFENDANT

Date 4-7-26

DERIL ZACCA
AUSA